UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

EUGENIO BELLIDO, EDGAR MALDONADO,
and ANAMARY LUTFY,

     Plaintiffs,        CASE NO.: 20-cv-24715

v.

DAN LEVY,           **JURY TRIAL DEMAND**

     Defendant.

_____/

## COMPLAINT

  EUGENIO BELLIDO, EDGAR MALDONADO, and ANAMARY LUTFY ("Plaintiffs"), by undersigned counsel, bring this *Complaint* against DAN LEVY ("Defendant") and state:

## INTRODUCTION

1. This Complaint sets forth a series of regrettable events and occurrences within Winston Towers 200 Association, Inc. ("Winston Towers 200" or "Building"), a condominium association located in Sunny Isles Beach, Florida, in which Defendant, along with others, have attempted to tear down a community and the reputation of many, including Plaintiffs, through baseless threats, lies, and defamation that were disseminated throughout the Building.

2. In addition, Defendant's statements were made in bad faith and with actual malice to, among other things, harm and destroy Plaintiffs' reputations to further the selfish and illegitimate goals of Defendant and his fellow board members and to cover their own misconduct, which occurred over a period of many years within Winston Towers 200.

3. To achieve this end, Defendant, along with others, did not make a simple misstatement on one occasion; instead, Defendant, along with others, committed a pattern of defamatory statements over many months, proving that this was a coordinated effort between himself and the other board members to destroy anyone in their path, including Plaintiffs.

1

4. Eugenio Bellido, Edgar Maldonado, and Anamary Lutfy were, respectively, the former treasurer, the former president, and the former property manager of Winston Towers 200.

5. In their positions, Plaintiffs worked tirelessly to repair the damage that previous managers and previous board members, including but not limited to Joseph Braunstein, Lana Braverman, and Leonard Greenberg, caused over a period of many years within Winston Towers 200.

6. Despite the best efforts of Eugenio Bellido, Edgar Maldonado, and Anamary Lutfy and their many successes, Defendant's intentional conduct created a maelstrom within Winston Towers 200 with his intentional false statements, lies, defamation, slander, libel, and deceit.

7. Ironically, and sadly, much of the damage that had previously occurred to Winston Towers 200 was caused by the current Board of Directors of Winston Towers 200, and Plaintiffs were the individuals who were trying to fix the past errors that were previously made by others.

8. Specifically, Joseph Braunstein, Lana Braverman, and Leonard Greenberg wreaked havoc on Winston Towers 200, as they were responsible for destroying Winston Towers 200's finances by, among other things, losing a major court case after a jury found that Winston Towers 200 committed fraud and breach of contract. This cost the Building millions of dollars.

9. The cause of this judgment was a direct result of the deceit, dishonesty, and fraud that Joseph Braunstein, Lana Braverman, and Leonard Greenberg, among others, used to manage Winston Towers 200 as they were intricately involved in this contract and court case.

10. Nevertheless, Defendant was involved in a scheme to publish letters to residents of Winston Towers 200, which defamed Plaintiffs, and he refused to disassociate himself from it.

11. This action seeks to restore Plaintiffs' names and reputations, which Defendant, along with others, has needlessly defamed, and to prevent the future injustice that is certain to occur.

## JURISDICTION, VENUE, AND PARTIES

12. This Court has jurisdiction under 28 U.S.C. § 1332(a) given that the amount in controversy is greater than $75,000 and the parties are citizens of different states.

13. The plaintiffs in this action are individuals and are domiciled in Miami-Dade County, Florida.

14. The defendant in this action is an individual and is domiciled in Nassau County, New York.

15. For the purposes of this lawsuit, all parties to this action are private persons and all events concerning them are private.

16. EUGENIO BELLIDO formally served as a Board member and Treasurer of Winston Towers 200 from approximately November 2015 to February 2020.

17. EDGAR MALDONADO formally served as a Board member and President of Winston Towers 200 from approximately February 2018 to February 2020.

18. ANAMARY LUTFY was employed as property manager of the Building from 2018 to 2020.

19. DAN LEVY is currently a Board Member of Winston Towers 200 since approximately February 2016.

20. The events that are detailed in this action are not matters of public concern.

21. Defendant is not a member of the press nor is he a journalist, and he is not associated with any newspaper, periodical, television network, or any other organization of this type.

22. Defendant's defamatory statements were made intentionally with ill will, hatred, and malice and were intended to cause direct emotional, physical, psychological, and where applicable, financial injury, on Plaintiffs, and none of the defamatory statements were privileged.

23. Defendant entered into a conspiracy and plot with others, including but not limited to other board members of Winston Towers 200, to defame Plaintiffs.

24. These individuals, including Defendant, have determined that the best way to control Winston Towers 200 and remain in power is to, among other things, destroy Plaintiffs' reputations.

25. In the alternative, to the extent that Defendant has not willfully and knowingly made false statements against Plaintiffs, Defendant has negligently made false statements against Plaintiffs in that he has failed to do even a basic search for the truth before making serious allegations concerning Plaintiffs to the public.

26. The Court maintains jurisdiction over Defendant given that the tortious conduct and other activity that forms the basis for this action was committed in Miami-Dade County, Florida, or in the alternative, the tortious conduct that Defendant committed harmed Plaintiffs who reside within Miami-Dade County, Florida, and Defendant would have known this.

27. Further, Defendant submitted to the jurisdiction of the Court and to this venue given that he is an active board member of a Florida corporation in Miami-Dade County, Florida.

28. Defendant's statements raised in this complaint constitute "intentional misconduct" given that Defendant "had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the [Plaintiffs] would result and, despite that knowledge, intentionally pursued the course of conduct resulting in injury or damage." *See* F.S. § 768.72(2)(a).

29. Defendant's statements raised in this complaint constitute "gross negligence" given that "[Defendant's] conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of [Plaintiffs.]; alternatively, all of Defendant's statements were made negligently. *See* F.S. § 768.72(2)(b).

30. Venue is also proper in Miami-Dade County, Florida as all relevant events, witnesses, and other evidence are located in Miami-Dade County, Florida.

31. At all relevant times, members of the community, including the residents of Winston Towers 200, knew and/or should have known that Defendant was a member of the "Board of Directors," and as such, they would have known that any letters from the "Board of Directors" were from Defendant.

32. At all relevant times, Defendant's defamatory actions were not related to his duties as a member of the Board of Directors of Winston Towers 200.

## THE FACTS

33. Winston Towers 200 is a condominium association, with approximately 409 units, located at 251-174th Street, Sunny Isles Beach, Florida 33160.

34. Winston Towers 200 is one of the oldest condominium buildings within Sunny Isles Beach.

35. As such, the unit owners and residents of Winston Towers 200 depend on the proper management of Winston Towers 200 through the Board of Directors and property manager.

36. The Board of Directors of Winston Towers 200 is composed of nine members, each of whom is extensively involved in and committed to the day-to-day operations of the Building.

37. Scheduled and noticed meetings are regularly conducted in which important topics are discussed, and unit owner participation is permitted and encouraged.

38. The minutes of those meetings establish that it is the Board and its officers, not the property manager, who make the business decisions of Winston Towers 200.

39. Further, all board members and officers work together, and one board member may not exercise control over the Building.

40. Anamary Lutfy who was the former property manager never had the unilateral authority to sign checks, disburse funds, enter into contracts, or make personnel decisions.

41. Prior to the arrival of Plaintiffs into the management of the Building, Joseph Braunstein, Lana Braverman, and Leonard Greenberg caused extreme financial distress on the Building, and nearly caused Winston Towers 200 to be condemned by the City of Sunny Isles Beach.

42. In an effort to rehabilitate their reputation within Winston Towers 200, among other things, Defendant along with other board members within Winston Towers 200 have conspired to defame Plaintiffs for their own personal benefit and unjust cause.

**A. Gross Mismanagement of Winston Towers 200 Caused by, Among Others, Joseph Braunstein, Leonard Greenberg, and Lana Braverman**

43. Given its age, Winston Towers 200 is reliant on the proper management of the Building to ensure that the unit owners may continue to dwell and use the Building.

44. Throughout the "leadership" of Joseph Braunstein, Lana Braverman, and Leonard Greenberg, which lasted for many years prior to 2016, Winston Towers 200 suffered major setbacks, including gross mismanagement, financial missteps, gross negligence, and fraud.

45. The minutes from Board of Directors' meetings from 2016 to 2020 prove that Winston Towers 200 suffered from many issues for extensive periods of time.

46. At all relevant times, Defendant was intricately involved in Winston Towers 200 during this time period, and as such, he was aware of these minutes and of the circumstances surrounding Winston Towers 200 during this time.

47. In addition, Defendant was a unit owner during this time period, and he is a still unit owner within Winston Towers 200.

48. To the extent that he did not attend these meetings, Defendant would have been able to read these minutes, as they were and still are publicly available.

49. Accordingly, it would be impossible for Defendant to say that he was unaware that Winston Towers 200 suffered many financial and structural setbacks prior to Plaintiffs taking their respective positions within Winston Towers 200.

50. On February 18, 2016, the minutes indicate that the Building was in a state of total disrepair.

51. Some of the pertinent notes from this meeting include then-President Ricardo Sanchez who reportedly stated, "[O]ur building is in the worst condition in its history."

52. On May 24, 2016, another board meeting occurred, and the minutes indicate that there were many repair projects, including the pool, cooling tower, balcony project, and laundry rooms.

53. On July 11, 2016, another board meeting was conducted, and the minutes indicate that there were many structural problems within Winston Towers 200. Among other things, the minutes state, "Our elevators are in such bad condition because little maintenance has been done"; "This building has been neglected for a long time"; "We have column problems on the first floor of the garage – they are cracked"; "We have had 110 tons of debris removed from pool deck – This was a safety issue"; "Pool is leaking constantly – we[] lose 2-3 inches of water per day and we pay the water bills"; "Cooling towers – We have 3 columns – 2 are broken."

54. In addition, it was within this meeting that it was expressly stated that Leonard Greenberg was released as Winston Tower 200's manager.

55. "Released," however, was an artful and respectful way of mentioning what really happened. In reality, Leonard Greenberg was fired from his position by Ricardo Sanchez who the President of Winston Towers 200 at the time for, among other things, his failure to manage properly the Building.

56. The culmination of Greenberg's gross mismanagement was manifested during the case of *Winston Towers 200 Association, Inc. v. Custom Group, Inc.* (2014-012817-CA-01).

57. On January 29, 2016, the jury returned a verdict in which it found that Winston Towers 200 committed "fraud in the inducement" and breach of contract. *See* Ex. A (jury verdict).

58. Ultimately, this court case resulted in a settlement of $1,750,000.00.

59. The facts of this case, which will be detailed below, were that Joseph Braunstein, Leonard Greenberg, and  Lana Braverman (the mother of Elena Grek who is the current President), among others, knowingly committed fraud on a company that contracted to repair balconies, among other things, within Winston Towers 200. *See* Ex. B (final judgment).

60. On September 26, 2016, another board meeting was conducted, and the minutes similarly indicate that there were many projects required to complete the 40-year re-certification, which was something that was neglected since 2011. Some of these projects were described in the minutes as, "Roof, pool and pool deck, Garage etc. and building security (security cameras, keyless entry, Roof and cooling tower support structure. Repair roof end to end, replace all corroded pipes, support structure and resurface . . . . We need a new roof."

61. On December 1, 2016, another board meeting was conducted, and the minutes indicate that there were still many projects that remained despite the passage of a special assessment of $3.8 million in September 2016. At this board meeting, there were additional repairs that needed to be made, including for the west elevator, cooling tower, and mechanical room. In addition, there were problems with the lights in the Building's garage and other defective pipes within Winston Towers 200.

62. The aforementioned minutes and the minutes from 2017 to 2020 reflect the mismanagement that occurred by Joseph Braunstein, Lana Braverman, and Leonard Greenberg, among others.

63. Among other things, Joseph Braunstein, Lana Braverman, and Leonard Greenberg would constantly "cut corners" to "save money" for the Building, but this created future problems that would eventually lead to the financial and structural devastation for Winston Towers 200.

64. Among other things, Joseph Braunstein, Lana Braverman, and Leonard Greenberg would cheat contractors and threaten them with baseless lawsuits to "save money."

65. A prime example of Joseph Braunstein, Lana Braverman, and Leonard Greenberg's tactics was in *Winston Towers 200 Assoc., Inc. v. Custom Group, Inc.* (2014-012817-CA-01).

66. This case involved, among other things, a contract that Winston Towers 200 entered into with Custom Group, Inc. to repair, among other things, the balconies of the Building.

67. After a full trial on the merits, a jury found that Winston Towers 200 committed "fraud in the inducement" and breached its contractual obligations, which resulted in an adverse verdict for the Building in the millions of dollars, including attorney's fees and costs.

68. One of the main issues within this case was that, upon information and belief, Joseph Braunstein, Lana Braverman, and Leonard Greenberg used the services of an "engineer" and made representations to Custom Group, Inc. based on this fake engineer.

69. Accordingly, when the fake engineer's reports turned out to be false, Custom Group attempted to re-negotiate the contract based on the fraud that Leonard Greenberg, Joseph Braunstein, and Lana Braverman committed.

70. The pattern and practice of Joseph Braunstein, Lana Braverman, and Leonard Greenberg during their time in Winston Towers 200 has been shown to be that they make "intentionally false statements meant to deceive and harm." *See, e.g.*, *Lawnwood Med. Ctr., Inc. v. Sadow*, 43 So.3d 710, 728 (Fla. 4th DCA 2010) ("Both fraud in the inducement and defamation per se depend on intentionally false statements meant to deceive and harm.") (emphasis omitted).

71. Nevertheless, instead of acting reasonably, honestly, and ethically, Joseph Braunstein, Leonard Greenberg, and Lana Braverman, on behalf of Winston Towers 200, refused to do so, and instead, sued Custom Group, Inc.

72. Ultimately, the litigation defeat led to the resignation of Lana Braverman, the firing of Leonard Greenberg, and the removal of Joseph Braunstein as President and his eventual defeat during the annual election of Winston Towers 200.

73. This defeat and the accompanying embarrassment and shame of being found liable for fraud has led Joseph Braunstein, Lana Braverman, and Leonard Greenberg to defame, slander, and libel Plaintiffs in an effort to regain their standing within the Winston Towers 200 community.

74. Defendant has also gone along with their scheme to defame, slander, and libel Plaintiffs by placing his name on defamatory letters against Plaintiffs.

75. Throughout the aforementioned period of mismanagement, Eugenio Bellido, Edgar Maldonado, and Anamary Lutfy were not involved in the decisions that led to the disrepair and financial destruction that Joseph Braunstein, Lana Braverman, and Leonard Greenberg, among others, had imposed on Winston Towers 200.

76. Defendant knew and/or should have known this obvious fact, and instead, he has chosen to jointly write letters to the residents of Winston Towers 200 to misstate these facts.

77. In the alternative, Defendant negligently failed to disseminate the truth and to investigate the facts that Plaintiffs had nothing do with the aforementioned mismanagement.

78. Eugenio Bellido became a board member around November 2015 when all the damage had been done; Edgar Maldonado entered the Board in 2018 and became president in 2019; and Anamary Lutfy became employed by the Building in April 2018.

79. Defendant knew or should have known that Eugenio Bellido, Edgar Maldonado, and Anamary Lutfy were not involved in the poor decisions that led to the financial destruction that Joseph Braunstein, Lana Braverman, and Leonard Greenberg, among others, created.

80. Despite this knowledge and/or reckless indifference for the truth and/or negligence for the truth, Defendant has defamed Eugenio Bellido, Edgar Maldonado, and Anamary Lutfy and falsely blamed them for the mismanagement of the Building and the poor finances of the Building even though it was well known that they had no responsibility for these problems.

81. Defendant made these statements with ill will, evil intention, reckless indifference to the truth, negligence, hatred, contempt, and wanton disregard for the truth.

82. As detailed below, some of the misstatements that constitute defamation, slander, and libel, include but are not limited to, the false statements that Eugenio Bellido, Edgar Maldonado, and Anamary Lutfy criminally mismanaged the Building, Winston Towers 200's funds were not properly handled, that the Building's finances were not properly maintained, that construction projects were not handled properly, and fines were allowed to remain.

83. However, the truth of the matter was that whoever managed Winston Towers 200 from 2016 to 2020 would have faced tremendous financial difficulties as a result of the poor management decisions of Joseph Braunstein, Lana Braverman, and Leonard Greenberg, among others.

84. The difficulty of managing a building that possessed many structural breakdowns and at the same time, a $1,750,000.00 judgment was an extreme scenario.

**B. Events Leading up to February 2020 Election**

85. From the time in which Eugenio Bellido, Edgar Maldonado, and Anamary Lutfy were in their respective positions, there was much good that happened to Winston Towers 200 even though Defendant, among others, will not admit these facts.

86. To begin, Plaintiffs, among others, worked together and helped manage the affairs of Winston Towers 200, so that the residents would not face excessive amounts of assessments or maintenance increases, but at the same time, the residents would still be able to enjoy the common areas of Winston Towers 200.

87. As such, Winston Towers 200 repaired many of the common areas, including the pool, the pool deck, the elevators, the laundry machines, the garage, the roof, the pool room, installed a new gym, painted the exterior of the Building, installed LED lighting throughout the entire Building, and continued to pay down debt, including the $1,750,000 judgment that Joseph Braunstein, Lana Braverman, Leonard Greenberg, and the previous board members caused the Building to suffer with.

88. In addition, Plaintiffs along with other previous board members, including Esther Hart and Eugene Muchnik, were able to have Winston Towers 200 pass the 40-year re-certification with the City of Sunny Isles Beach in January 2020.

89. This was a goal that individuals like Joseph Braunstein, Lana Braverman, and Leonard Greenberg could not even come close to achieving.

90. Another important event was that Plaintiffs, especially Eugenio Bellido, were able to guide Winston Towers 200 through Hurricane Irma and all associates costs that arose due to that unforeseen hurricane and unforeseen expenses that needed to be paid.

91. Although Defendant, among others, quibble about minor expenses that Plaintiffs incurred and make false accusations of criminality and gross mismanagement, Defendant, among others, ignore these accomplishments, because Defendant, among others, have actual malice and hatred towards Plaintiffs.

92. In addition, there was a forensic audit conducted of Winston Towers 200's finances, and it was found that there were no irregularities from Fiscal Year 2018.

93. Defendant is well aware of this financial audit, yet he continues to participate in the false claim that there have been financial irregularities and various other crimes or bad acts with the Building's finances, and he also knows that the 2016, 2017, and 2018 audits were performed with no issues.

94. Further, Defendant, among others, selectively targeted Eugenio Bellido, Edgar, Maldonado, and Anamary Lutfy for anything that went wrong with the Building, and this is a further sign that Defendant is committing defamation with malice.

95. Winston Towers 200 is comprised of 9 board members, and there were always frequent meetings in which Winston Towers 200 matters were discussed.

96. In addition, pursuant to Florida law, many records within Winston Towers 200 are available upon request.

97. The business of Winston Towers 200 was never closed off to the other board members or unit owners, and for major contracts or assessments, the entire board was notified of the decision, and nearly every time, the entire board agreed upon the course that was chosen.

98. Furthermore, Defendant, among others, frequently blames Plaintiffs for matters that were outside of their control or for matters that were broken or destroyed before they entered Winston Towers 200 in their respective positions of treasurer, president, and manager.

99. Defendant, however, was only concerned with manipulating the residents of Winston Towers 200, and he jointly failed to state the truth to the Building's unit owners.

100.     Following many misstatements and lies, the unit owners of Winston Towers 200 were deceived and elected other individuals other than Eugenio Bellido and Edgar Maldonado as their board members in February 2020.

101.     Following the election results, on that same day, Anamary Lutfy was told that she could not return to Winston Towers 200 by Ella Kallish who was president for about 1 day.

**C. Aftermath of February 2020 Election**

102.     After the election results of February 2020, with Defendant's direct help and assistance, Joseph Braunstein and Leonard Greenberg manipulated themselves into the Building as Treasurer and property manager, respectively.

103.     Even though the residents did not want Joseph Braunstein as a board member as per the election results, Defendant, among others, voted in Joseph Braunstein as a board member against the will of the residents of Winston Towers 200.

104.     Following Joseph Braunstein's entrance, Leonard Greenberg became an employed property manager with the strong support of Defendant and Joseph Braunstein, among others.

105.     Given their second opportunity to control the Building, Joseph Braunstein, and Leonard Greenberg, among others, are continuing their modus operandi of making material false statements concerning the affairs of the Building;—ironically, it was this same practice that resulted in a jury verdict against Winston Towers 200 in the millions of dollars in 2016.

106.     Specifically, the defamation that Defendant, among others, are committing is the constant false statements and lies that generally consist of the following: Plaintiffs are criminals, Plaintiffs mismanaged the Building, Plaintiffs violated many laws, Plaintiffs were involved in kickbacks, and Plaintiffs were illegally seeking to benefit themselves at the expense of Winston Towers 200.

107.     These statements have been made on many occasions and continue to occur, and these statements are frequently published to the Building's unit owners and to the police.

108.     These statements, which are detailed below, were made with knowledge of their falsity and/or with reckless disregard of the truth.

109.     In the alternative, these statements were negligently made without any intention or effort made into establishing the truth of its contents.

110.     These statements were made with malice, ill will, hatred, and evil against Plaintiffs as the current board of directors retribution against their "political" opponents within Winston Towers 200.

111.     The primary purpose of Defendant's defamation against Plaintiffs is to maintain control over the Building out of personal self-interest and self-gain.

112.     As it currently stands, Joseph Braunstein could never win an election within Winston Towers 200, and Leonard Greenberg is an extremely unpopular property manager among many in Winston Towers 200.

113.     The reason for the unpopularity of Joseph Braunstein and Leonard Greenberg is, among other things, that the residents within Winston Towers 200 are aware of the millions of dollars that Winston Towers 200 lost as a direct result of Braunstein's and Greenberg's fraud, as per the jury verdict, in 2016.

114.     The statements from Defendant, which were made collectively as the Board of Directors, that constitute defamation are listed below, but the statements largely consist of false allegations that Plaintiffs are criminals, that Plaintiffs have mismanaged Winston Towers 200's affairs, that Plaintiffs have engaged in various bad acts, that Plaintiffs have concocted

an elaborate scheme to benefit themselves and harm the general maintenance of Winston Towers 200, and that Plaintiffs engaged in a plot to destroy computer software.

115.    All of these statements are untrue, are lies, and the most disturbing thing is that Defendant will not distance himself from these palpably false and nefarious statements.

116.    Even though Defendant is well aware that the police nor any other regulatory agency has even questioned, arrested, or take any other meaningful action against Plaintiffs other than listen to the bizarre and unproven claims, Defendant refuses to retract his lies.

117.    The reason the police nor any other regulatory agency will contact Plaintiffs is simple. Plaintiffs did nothing wrong and did nothing unethical, and there is no evidence that they did anything unethical or committed any crimes.

118.    Defendant who has been making the aforementioned allegations of criminality and mismanagement, is knowingly making these false statements, and/or is making these false statements with reckless disregard for the truth.

119.    In the alternative, Defendant who has been making the aforementioned allegations of criminality and misconduct is negligently making these false statements, and is failing to investigate the facts, which are readily apparent.

120.    As proof of the knowledge that Winston Towers 200 was suffering well prior Plaintiffs' arrival into Winston Towers 200, it is well known within the community that Winston Towers 200 was suffering from gross incompetence and mismanagement prior to the involvement of Plaintiffs.

121.    Back in 2010, the state of Winston Towers 200 became of such concern to certain residents, that Alex Olivera, a current member of the board and a named-Defendant, sued Winston Towers 200 for mismanagement and misbehavior. *See* Case No. 2010-36671-CA-01

122.     The allegations within the Complaint from Alex Olivera against Winston Towers 200 detailed that back in 2010, the management of Winston Towers 200, which upon information and belief included Leonard Greenberg, revealed a scheme in which, "The Association has executed an unprecedented contract to pay for the maintenance of personal property of the members, specifically in-unit appliance servicing and maintenance." *See* Compl. ¶9, 2010-36671-CA-01 (Miami-Dade County).

123.     In addition, Alex Olivera alleged that Winston Towers engaged in an "illegal expenditure of Association funds." *See* Compl., 10-36671-CA-01, ¶28.

124.     Rather than defend itself against these claims, Winston Towers 200 settled this lawsuit.

125.     Another frequent issue for residents has been the status of the 23rd floor within Winston Towers 200, which has resulted in several fines from the City of Sunny Isles Beach.

126.     Winston Towers 200 has been subject to many fines and code violations well prior to 2017-2018, which means that Plaintiffs walked into a situation in which Winston Towers 200 was getting fined before their first day on the job.

127.     As such, to blame Plaintiffs for the failure to fix all pending issues, which were many, and to magically make the structural problems of Winston Towers 200 disappear would be irrational and can only be explained by concluding that Defendant has actual malice and hatred towards Plaintiffs.

128.     As a board member for many years, Defendant would have known that Anamary Lutfy had nothing to do with the fines on the 23rd floor, and he would have known that Anamary Lutfy did not have the magical ability to infuse Winston Towers 200 with cash that had been depleted due to his mismanagement and fraud, as the jury found after a full trial on the merits in the Custom Group case.

129.     Defendant would have also known that Anamary Lutfy was the property manager, not a construction company or engineer, and she did not have the authority to spend funds unilaterally, gather resources, or operate on her own, as the Board of Directors controlled the overarching goals and directives that she would perform.

130.     Even if Defendant did not know this, these facts were readily apparently and could have easily been obtained, and as such, Defendant knowingly or in the alternative, negligently made false statements to the unit owners of Winston Towers 200.

131.     Defendant made these statements, and others against Anamary Lutfy and Plaintiffs due to his ill will, hatred, and malice against Plaintiffs.

132.     Accordingly, Plaintiffs must commence this action to stop the past, present, and future injury to their names and reputations.

**D.  Letters to Residents and Other Public Statements that Defendant Made Against Plaintiffs Following the February 2020 Election**

133.     Furthermore, after the election results in February 2020, Defendant with the assistance of fellow board members, continued to make knowingly false statements about Plaintiffs.

134.     These statements had no reasonable connection to Defendant's duties as a board member of Winston Towers 200, especially considering their false nature.

135.     In addition, all the letters and statements were made, with wanton disregard of the truth, evil motive, and hatred against Plaintiffs.

136.     In the alternative, Defendant made these statements with reckless disregard for the truth or with negligence and/or gross negligence against Plaintiffs.

137.     The Board of Directors, including Defendant, sent a series of letters to all unit owners within Winston Towers 200. To the extent that any letter was not signed off by "Board of

Directors," it was sent with the Building's office email address, and this is proof that the Board of Directors and Defendant sent these letters through email.

138.     In addition, all residents and unit owners, among others, who received the letters by email would have understood that Defendant was a member of the "Board of Directors."

139.     The series of public statements and letters are as follows.

140.     On March 30, 2020, the Board of Directors caused a letter, titled "WT 200 Financial Update Letter," to be published to all residents within Winston Towers 200. *See* Ex. C.

141.     Among other thigs, this letter stated:

"In short, we found that we are in the hole due to the gross mismanagement of the previous board."

"Listed bel[]ow some of the reasons we are in this difficult financial situation . . . 1. The signing of contracts for jobs without securing at least 2 or 3 proposals as required by the Florida State Statutes and our Bylaws, this results in overpayments of double and triple of what we should have paid for such jobs."

"As a result of what is listed above we are in a financial hole. We can assure you that we are doing our best to climb out of the hole in which we were placed in by the previous board."

142.     These statements are defamatory and libelous in that they falsely accused Plaintiffs of committing various crimes, "gross mismanagement," and other bad acts.

143.     On April 27, 2020, the Board of Directors caused a letter, titled, "Board of Directors update for April 2020," to be published to all residents within Winston Towers 200. *See* Ex. D.

144.     Among other things, this letter stated:

"The board of directors continue[] to work on fixing the damage done by the previous board of directors."

"We terminated the contract which Eugenio Bellido signed with Comp Security, this contract was signed without consulting the Board of directors and without voting on accepting a very expensive contract of $230,000.00 per year."

"We replaced Comp Security with Elite Security which was taking care of security in our building for many years before they were fired by Edgar Maldonado and Eugenio Bellido, using a very suspicious excuse for this action."

"One of the results of the 911 restoration claims caused our water damage deductible to increase from only $5,000.00 per claim to an exorbitant $50,000.00 per claim. We believe that, to a great extent, the previous treasurer Eugenio Bellido and the previous Manager Mrs. Anny Lutfy were major contributors to the issues which resulted in this tremendous increase."

"The City of Sunny Isle Beach cited the Association with a violation for the conversion and construction of the New Association offices without obtaining a permit and is imposing a daily fine of $500.00. We are working to cure this problem ASAP. Keep in mind that this conversion was done without the approval of the unit owners and without a vote of the Board of Directors. This action which Mr. Bellido was responsible for, resulted in a loss of $18,000.00 in annual income . . . money which is sorely needed today."

"We are trying to resolve the issues we have with a few bad contracts which Mr. Bellido signed."

"When Mr. Bellido was asked to explain his actions, he claimed that since it was an emergency (which is not true) he did not have to get the approval of the Board or even get one or more competing bids. We also asked the former President, Edgar Maldonado what happened, and he told us that he would check his notes and get back to us but he never did. It is truly clear that someone ripped off the WT 200 Association."

"Another issue which we have with Above Air & Heating is that the contract Mr. Bellido signed with them for the installation of 2 heaters for our swimming pool. He also pre-paid them in full the sum of $14,700.00 before the job started. This again looks highly unusual and very suspicious. Who pays in full and in advance for jobs, even before it is started or before it is complete and passes inspection?"

"We asked the former President Edgar Maldonado if there were any other bids for the pool heaters and he told us he does not remember and would check his notes but never got back to us.

"We referred this matter to our lawyer. It is clear that something is very wrong here and all this information is being forwarded to the proper authorities for criminal investigation."

145.     These statements are defamatory and libelous in that they falsely accused Plaintiffs of

committing various crimes and bad acts that have never been committed.

146.     On May 12, 2020, the Board of Directors caused a letter, titled, "Where is our money?

The true story," to be published to all residents within the Building. *See* Ex. E.

147.     Among other things, this letter stated:

"The financial and poor maintenance condition our building finds itself today is the result of 4 years of criminal mismanagement. It all started in February 2016 when Ricardo Sanchez and Eugenio Bellido gained control over the Association's Board of Directors."

"Unfortunately, the unit owners were fooled! The sole purpose of Ricardo Sanchez and Eugenio Bellido in taking over the board of directors was to benefit themselves. They had a plan. The first stage of their plan was to replace Joseph Braunstein and make Ricardo Sanchez President and Eugenio Bellido Treasurer. This way they gained control over the Association finances. The second stage of their plan was to get rid of the building Manager Lenny Greenberg. They knew that Lenny would insist on following our bylaws and the Florida state regulations, which they did not plan to do."

"After Lenny Greenberg was terminated, they were looking for a replacement who would go along with their plan but were unsuccessful, until they found Anny Lutfy, who had no CAM license and no experience as a building manager. The only qualification which she had was that she was a friend of Ricardo Sanchez and would do his bidding. It was a great job for her. She was hardly present in the building most of the day and she would only show up for a few hours in the evening, collecting her salary of $55,000.00 while still maintaining her teaching job in the university and in her husband's office. She did such a great job that she was given a raise of $5,000.00 in April 2019."

"Once they achieved their goal of removing all the obstacles, they started implementing their plan. They signed contracts for various projects which were extremely expensive without getting at least 3 competitive bids and without bringing it to a vote and getting an approval from the board of directors. This became the pattern for all contracts and projects for the last 4 years, until they were replaced on February 2020."

"On November 4th Ricardo Sanchez signed a roofing contract with KIS Construction Services LLC, a small-time contractor, $1,000,000.00. The job ended costing us $1,134,072.92. We spoke to a few people knowledgeable in the cost of a new roof and without exception they said that the cost, at the most, should have been no more than $800,000.00. Clearly, we have been ripped off!"

"On November 16th Ricardo Sanchez and Eugenio Bellido signed a Pool and Garage column restoration with KIS Construction Services LLC in the amount of $389,680.00. This contract ended up costing us $451,785.63. Note the following, this job was subcontracted to another company which did a lousy job using inferior

material; right now, we are chasing after KIS Construction to fix the leaking pool Ricardo Sanchez and Eugenio Bellido contracted KIS Construction Services LLC to paint the Garage at a cost of $105,600.00. This job could have and should have been done for a fraction of this cost by our maintenance people. Something does not look right."

"As you can see there was a pattern which Ricardo Sanchez and Eugenio followed. They found a company like KIS Construction, a small-time contractor, which never had a project that big and gave them the bulk of the renovation project at a tremendously inflated cost. Why would 2 smart and educated people like Sanchez and Bellido do that? Who benefited from those over inflated contract? In whose pockets did the excess charge go."

"As a result of the actions of Ricardo Sanchez, Eugenio Bellido, Esther Hart and more recently Eugene Muchnik, we find ourselves in a terrible financial situation. We had to arrange a payment plan, within interest to pay the $550,000.00 bill for the new insurance policy which is an increase of 37% over the previous year. The previous board was warned that there is going to be a big increase in the premium, but they chose to do nothing to prevent the excess claims."

148.     It is readily apparent that the letter was from the Board of Directors and Defendant, because the letter came from the email system that the Board of Directors regularly use to communicate with the residents of Winston Towers 200.

149.     These statements are defamatory and libelous in that they falsely accused Plaintiffs of committing various crimes and bad acts that have never been committed.

150.     On May 14, 2020, the Board of Directors caused a letter, titled, "Criminal Investigations" to be published to all residents within Winston Towers 200. *See* Ex. F.

151.     Among other things, the letter stated:

"Many unit owners have asked us what we are doing about the criminal behavior of the officers of the previous board and the previous manager Anny Lutfy."

"Immediately after we take over on February 12, 2020 and discovered that the financial records, contracts and proposals were missing, plus all the data was erased from the hard drives of the Association computers, we filed a report with the Sunny Isles Beach Police Department."

"This was followed by a meeting with the SIB Detective Mitchell Glansberg, as well as having several follow up conversations with him. We provided the detective with

all the information which he requested, and which were available to us. We also provided him with a video recording of criminal activity just before the election."

"We can assure you that we will continue to vigorously investigate all the wrong doings which took place by the 4 previous board officers and the previous building manager."

"If you have any information which could help us in our investigation, please contact us or Detective Mitchell Glansberg at the Sunny Isles Beach Police Department."

152.     These statements are defamatory in that they falsely accused Plaintiffs of committing various crimes and bad acts that have never been committed.

153.     Furthermore, the "video recording" that is referenced has nothing to do with the financial records, contracts, proposals or data, and in reality, there was no underlying crime.

154.     On May 29, 2020, the Board of Directors caused a letter, titled, "Letter from our C.P.A." to be published to all residents within Winston Towers 200. *See* Ex. G.

155.     Among other things, this letter stated:

"A certified audit is required by the Florida State statutes every year but, due to the previous administrations mismanagement and neglect, it was not done."

"Due to the fact that many of our financial records and receipts are missing, the accounts have sent a letter (see attached) regarding our unit owners request to have a forensic investigation."

"Following the advice of the CPA's letter the Board decided to only continue with the required Certified Audits and not to go forward with the costly forensic audit at this time."

"However, if the former President, Edgar Maldonado and the former Treasurer, Eugenio Bellido, who was were responsible for missing financial records ever decide to return them to the office, then the current Board will be able to proceed with the forensic audit."

156.     These statements are defamatory and libelous in that they falsely accused Plaintiffs of committing various crimes and wrongdoing that have never been committed.

## COUNT ONE – DEFAMATION FOR LETTERS FROM MARCH 2020 TO MAY 2020
[on behalf of Eugenio Bellido, Edgar Maldonado, and Anamary Lutfy against Dan Levy]

157.     Plaintiffs assert and re-allege paragraphs 1 through 156.

158.     To prove a claim for defamation, a plaintiff must prove the following five elements:

(1) publication, (2) falsity, (3) the actor must act with knowledge or reckless disregard as to

the falsity on a matter concerning a public official, or at least negligently on a matter

concerning a private person, (4) actual damages, and (5) the statement must be defamatory.

*See, e.g.*, *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008).

159.     On March 30, 2020, April 27, 2020, May 12, 2020, May 14, 2020, and May 29, 2020,

Defendant, as one of the board of directors, caused letters to be sent out to the unit owners of

Winston Towers 200. *See* Ex. C, D, E, F, and G.

160.     These letters and statements constitute defamation as they allege Plaintiffs committed

or were engaged in "gross mismanagement," criminal misconduct, kickbacks, illegality, and

other unethical behavior that never occurred.

161.     The statements, individually and collectively, contained in these letters are blatant

falsehoods that harm Plaintiffs' reputations.

162.     Defendant knew the statements in this letter were false and/or made these statements

with reckless disregard for the truth.

163.     In the alternative, Defendant negligently made these false statements.

164.     The statements made in these letters by Defendant were done with actual malice, ill

will, hatred, and bad faith.

165.     As a proximate result, Plaintiffs have suffered actual damages, nominal damages, loss

of reputation, ostracization, humiliation, embarrassment, inconvenience, mental and

emotional anguish and distress and other compensatory damages, as well as loss of reputation in trade and professional and personal life.

**WHEREFORE**, EUGENIO BELLIDO, EDGAR MALDONADO, and ANAMARY LUTFY seek all damages as available against DAN LEVY for:

(a) An award of injunctive relief to end the personal attacks, including but not limited to cessation of all defamation, and a retraction letter;

(b) An award for all damages, including but not limited to punitive damages, actual damages, nominal damages, general damages, special damages, incidental damages, and non-economic damages;

(c) All further relief that may be just and proper.

## COUNT TWO – DEFAMATION PER SE FOR LETTERS FROM MARCH 2020 TO MAY 2020
[on behalf of Eugenio Bellido, Edgar Maldonado, and Anamary Lutfy against Dan Levy]

166.     Plaintiffs assert and re-allege paragraphs 1 through 156.

167.     Under Florida law, a statement amounts to defamation per se if it accuses the plaintiff of committing a crime or imputes to the plaintiff conduct, characteristics, or a condition incompatible with the proper exercise of his or her lawful business, trade, profession, or office.

168.     On March 30, 2020, April 27, 2020, May 12, 2020, May 14, 2020, and May 29, 2020, Defendant, as one of the board of directors, caused letters to be sent out to the unit owners of Winston Towers 200. *See* Ex. C, D, E, F, and G.

169.     Among other things, these statements constitute defamation per se, because they contained asserts of fact that were untrue and would constitute a "crime or imputes to the plaintiff conduct, characteristics, or a condition incompatible with the proper exercise of his or her lawful business, trade, profession, or office."

170.     For instance, the letters allege that Plaintiffs violated the law in several respects, yet no evidence exists to prove these assertions.

171.     The statements from the Board of Directors, which included Defendant, are not true and constitute lies, as the real reason for Winston Towers 200's poor financial position is that Joseph Braunstein, Lana Braverman, Leonard Greenberg committed fraud and breach of contract while managing the building in 2016, which resulted in a $1,750,000 judgment liability.

172.     Throughout the letters, the drafters of the letter, including Defendant, singled out Plaintiffs and made it clear to the reader that Plaintiffs were involved in misconduct, unethical behavior, or illegality, as they singled out the "previous board," which included Eugenio Bellido, Edgar Maldonado, and Anamary Lutfy who was the property manager that was hired by the Board Members of Winston Towers 200.

173.     Defendant knew the statements in this letter were false and/or made these statements with reckless disregard for the truth.

174.     In the alternative, Defendant negligently made these false statements.

175.     The statements made in these letters by Defendant were done with actual malice, ill will, hatred, and bad faith.

176.     As a proximate result, Plaintiffs have suffered actual damages, nominal damages, loss of reputation, ostracization, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, as well as loss of reputation in trade and professional and personal life.

**WHEREFORE**, EUGENIO BELLIDO, EDGAR MALDONADO, and ANAMARY LUTFY seek all damages as available against DAN LEVY for:

(a) An award of injunctive relief to end the personal attacks, including but not limited to cessation of all defamation, and a retraction letter;

(b) An award for all damages, including but not limited to punitive damages, actual damages, nominal damages, general damages, special damages, incidental damages, and non-economic damages;

(c) All further relief that may be just and proper.

## COUNT THREE–DEFAMATION BY IMPLICATION
## FOR LETTERS FROM MARCH 2020 TO MAY 2020

[on behalf of Eugenio Bellido, Edgar Maldonado, and Anamary Lutfy against Dan Levy]

177.    Plaintiffs assert and re-allege paragraphs 1 through 156.

178.    On March 30, 2020, April 27, 2020, May 12, 2020, May 14, 2020, and May 29, 2020, Defendant, as one of the board of directors, caused letters to be sent out to the unit owners of Winston Towers 200. *See* Ex. C, D, E, F, and G.

179.    Defendant, by publishing all of the aforementioned statements, defamed by implication Plaintiffs, as they provided the reader the false and/or misleading impression given by juxtaposition or omission of facts that Plaintiffs commitment certain wrongful conduct, mismanaged the Building, and committed other crimes, and bad acts.

180.    Specifically, Defendant negligently, willfully, and/or maliciously stated falsely and misleading information that Plaintiffs committed these acts.

181.    The aforementioned defamatory published statements by implication severely injured Plaintiffs.

182.    As a proximate result, Plaintiffs have suffered actual damages, nominal damages, loss of reputation, ostracization, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, as well as loss of reputation in trade and professional and personal life.

**WHEREFORE**, EUGENIO BELLIDO, EDGAR MALDONADO, and ANAMARY LUTFY seek all damages as available against DAN LEVY for:

(a) An award of injunctive relief to end the personal attacks, including but not limited to cessation of all defamation, and a retraction letter;

(b) An award for all damages, including but not limited to punitive damages, actual damages, nominal damages, general damages, special damages, incidental damages, and non-economic damages;

(c) All further relief that may be just and proper.

## JURY DEMAND

183.     Plaintiffs demand a trial by jury on all issues so triable.

## DEMAND FOR RELIEF

**WHEREFORE**, EUGENIO BELLIDO, EDGAR MALDONADO, and ANAMARY LUTFY seeks all damages as available against DAN LEVY for each cause of action:

(a) An award of injunctive relief to end the personal attacks, including but not limited to cessation of all defamation, and a retraction letter;

(b) An award for all damages, not less than $1 million for each Plaintiff, including but not limited to, punitive damages, actual damages, nominal damages, general damages, special damages, incidental damages, and non-economic damages;

(c) All further relief that may be just and proper.

Dated: November 16, 2020                              Respectfully Submitted,


       */s/ Michael C. Lutfy*
Michael C. Lutfy
Fla. Bar No. 126339
**Lutfy Law Offices**
80 S.W. 8th Street, Suite 2000
Miami, Florida 33130
Tel.: (305) 812-2351
Lutfy.Michael@gmail.com